**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| SALVATORE A. ZAMBITO, II, AS | ) | |
| POWER OF ATTORNEY FOR | ) | |
| SALVATORE A. ZAMBITO I, | ) | |
| SALVATORE A. ZAMBITO I, and | ) | |
| RITA A. ZAMBITO | ) | |
| | ) | |
| Plaintiffs, | ) | No. 9:16-cv-03039-DCN |
| | ) | |
| vs. | ) | |
| | ) | |
| OCCIDENTAL FIRE & CASUALTY | ) | |
| COMPANY OF NORTH CAROLINA, | ) | **ORDER** |
| IAT INSURANCE GROUP, INC., | ) | |
| OCWEN FINANCIAL CORPORATION, | ) | |
| OCWEN LOAN SERVICING, LLC, | ) | |
| ALTISOURCE SOLUTIONS, INC., | ) | |
| and HILTON HEAD  PLANTATION | ) | |
| PROPERTY OWNERS | ) | |
| ASSOCIATION, INC., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on plaintiffs Salvatore A. Zambito, II, Salvatore A. Zambito, I, and Rita A. Zambito ("the Zambitos") motion to remand, ECF No. 9. For the reasons set forth below, the court grants the Zambitos' motion to remand.

## I.  BACKGROUND

The instant suit arises from an alleged unlawful intrusion, theft, and disposal of personal property in August 2014 from the residence located at 11 Sundew Court, Hilton Head Island, South Carolina ("the House") in the gated Hilton Head Plantation community ("the Plantation"). Compl. ¶¶ 10, 24, 77. Plaintiffs Salvatore A. Zambito, I, and Rita A. Zambito were the lawful owners of the House and owners of the personal

1

property contained within the House at the time of the alleged theft.  Id. ¶ 11.  The

Zambitos had recently become the owners of the house as a result of a prior foreclosure

proceeding initiated by Salvatore A. Zambito I, who had issued a loan to the prior owner

that was secured by a second mortgage.  Id. ¶ 11–24.  The Zambitos allege that defendant

Altisource gained unauthorized entry to the Plantation where it removed personal

property from the House and changed the locks on the doors.  Id. ¶¶ 26, 79.

The Zambitos initiated this action on July 27, 2016 in the Beaufort County Court

of Common Pleas.  ECF No. 1.  The Zambitos allege:  (i) breach of contract against

Defendant Occidental Fire & Casualty Company of North Carolina ("Occidental"); (ii)

declaratory judgment against Occidental; (iii) bad faith refusal to pay insurance claim

against Occidental and IAT Insurance Group, Inc. ("IAT Insurance"); (iv) violation of the

South Carolina Unfair Trade Practices Act against Occidental and IAT Insurance; (v)

conversion against Defendants Ocwen Financial Corporation and Ocwen Loan Servicing

LLC ("the Ocwen defendants") and Defendant Altisource Solutions, Inc. ("Altisource");

(vi) trespass against the Ocwen Defendants and Altisource; (vii) negligence against

Defendant Hilton  Head Plantation Property Owners Association, Inc. ("HHPPOA");

(viii) intentional infliction of emotional distress against the Ocwen defendants and

Altisource; (ix) violation of the South Carolina Unfair Trade Practices Act against the

Ocwen Defendants and Defendant Altisource; and (x) negligence against the Ocwen

Defendants and Defendant Altisource.  ECF No. 1.

On September 7, 2016, the Ocwen defendants removed the case to this court,

arguing that HHPPOA was fraudulently joined for the purpose of defeating diversity

jurisdiction.  ECF No. 1.  The Zambitos filed a motion to remand on October 11, 2016.

ECF No. 9.  The Ocwen defendants filed a response on October 26, 2016.  ECF No. 17.

HHPPOA filed a response on November 7, 2016.  ECF No. 24.  The Zambitos filed a

reply to Ocwen's response on November 7, 2016.  ECF No. 25.  The Zambitos filed a

reply to HHPPOA's response on November 17, 2016.  ECF No. 27.  The motion has been

fully briefed and is ripe for the court's review.

## II.  STANDARD

### A.      Motion to Remand

As the parties seeking to invoke the court's jurisdiction, defendants have the

burden of proving jurisdiction upon motion to remand.  Dixon v. Coburg Dairy, Inc., 369

F.3d 811, 816 (4th Cir. 2004) (citing Mulcahy v. Columbia Organic Chems. Co., 29 F.3d

148, 151 (4th Cir. 1994)).  In deciding the motion, the federal court should construe

removal jurisdiction strictly in favor of state court jurisdiction.  Id.  "If federal

jurisdiction is doubtful, a remand is necessary."  Mulcahy, 29 F.3d at 151 (citations

omitted).

## III.  DISCUSSION

A civil case that is otherwise removable solely on the basis of diversity

jurisdiction "may not be removed if any of the parties in interest properly joined and

served as defendants is a citizen of the State in which such action is brought."  28

U.S.C.A. § 1441(b)(2).  HHPPOA is a nonprofit organization organized under the laws of

South Carolina.  Compl. ¶ 8.  The Ocwen defendants filed a notice of removal claiming

that HHPPOA was fraudulently joined for the purpose of defeating diversity jurisdiction.

3

ECF No. 1.  The Zambitos contend in the motion before the court that the fraudulent

joinder grounds on which the Ocwen defendants filed a notice of removal to this court are

improper and so the case should be remanded to state court.  Pls.' Mot. 3

> To establish fraudulent joinder of a nondiverse defendant,
>
> the removing party must establish either:  [t]hat there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or [t]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts.

Mayes v. Rapoport, 198 F.3d 457, 464 (4th Cir. 1999) (quoting Marshall v. Manville

Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993)) (emphasis in original).  "'The burden on the

defendant claiming fraudulent joinder is heavy:  the defendant must show that the

plaintiff cannot establish a claim against the nondiverse defendant even after resolving all

issues of fact and law in the plaintiff's favor.'"  Id. (quoting Marshall, 6 F.3d at 232-33).

"This standard is even more favorable to the plaintiff than the standard for ruling on a

motion to dismiss under Fed. R. Civ. P. 12(b)(6)."  Hartley v. CSX Transp., Inc., 187

F.3d 422, 424 (4th Cir. 1999) (citation omitted).  When determining whether attempted

joinder is fraudulent, the court is "not bound by the allegations of the pleadings, but may

instead consider the entire record, and determine the basis of joinder by any means

available.'"  Mayes, 198 F.3d at 464 (quoting AIDS Counseling, 903 F.2d at 1004)

(internal citation and quotation omitted).

In the notice of removal, the Ocwen defendants argue that HHPPOA is

fraudulently joined because there is no "factual or legal basis for [HHPPOA's] alleged

duty to prevent criminal activity" and so there is "no possibility" that the Zambitos can

establish a cause of action for negligence against HHPPOA.  Notice of Removal 4.  Since

4

negligence is the only claim that the Zambitos assert against HHPPOA, the Ocwen defendants argue that the "lack of factual or legal basis" for HHPPOA's duty towards the Zambitos precludes a cause of action against HHPPOA for negligence and demonstrates that HHPPOA was fraudulently joined.  Notice of Removal 4-5.

 In order to state a claim for negligence in South Carolina, a plaintiff must allege the following: (1) a duty of due care; (2) a breach of that duty by a negligent act or omission; (3) the defendant's breach was the actual and proximate cause of the plaintiff's injury; and (4) the plaintiff suffered an injury or damages.  Andrade v. Johnson, 588 S.E.2d 588, 592 (S.C. 2003).  The Zambitos allege that in early August 2016, unauthorized persons were granted access to Hilton Head Plantation through a security gate that is under the "ownership, control and authority" of the HHPPOA.  Pl.'s Mot. 5. The Zambitos allege that they did not approve of any guest or visitor to enter Hilton Head Plantation for purposes of entering their House and did not authorize Altisource or any other company to remove their personal property.  Pl.'s Mot. 6.

 The Ocwen defendants argue that a homeowner's association has no general duty to protect property owners from the criminal acts of third parties.  Ocwen Def.'s Resp. 2. It is true that South Carolina courts have "decline[d] to find that landlords owe an affirmative duty to protect tenants from criminal activity merely by reason of the [landlord/tenant] relationship."  Cramer v. Balcor Prop. Mgmt., Inc., 441 S.E.2d 317, 318 (S.C. 1994).  However, South Carolina recognizes the affirmative acts exception to this general rule, which provides that one who undertakes to act, even under no obligation to do so, becomes obligated to act with reasonable care.  Sherer v. James, 351 S.E.2d 148,

150 (S.C. 1986). The Zambitos allege that HHPPOA had discussed recent episodes of criminal activity and the implementation of measures to identify perpetrators and to prevent future episodes. Pl.'s Mot., Ex. F July 214 HHPPOA Security Committee Meeting Minutes. The court finds that the Zambitos' allegations that HHPPOA was on notice of "recent episodes" of criminal activity, and took some steps to address it, suggest that HHPPOA undertook an affirmative duty extending beyond the landlord/tenant relationship contemplated by the <u>Cramer</u> court.

The Ocwen defendants cite <u>Wright v. PRG Real Estate Mgmt., Inc.</u>, 775 S.E.2d 399 (S.C. Ct. App. 2015), <u>reh'g denied</u> (Aug. 20, 2015) to support the argument that HHPPOA did not have a duty to keep common areas secure from criminal activity. Ocwen Def.'s Resp. 5. In <u>Wright</u>, the court found that even under the affirmative acts exception, the creation of a courtesy officer program did not impose a duty to exercise reasonable care in providing security at the complex. <u>Id.</u> at 406. Here, HHPPOA maintains 27 full-time Security Officers who are directly employed by the HHPPOA, and are responsible for enforcing the "stringent" requirements for entering the community. Pl.'s Mot., Ex. C HHPPOA's Description of Security Department. The Security Officers of the HHPPOA are responsible for providing a number of services, including "access control to the Plantation at three gates" and "enforcement of . . . Plantation regulations." <u>Id.</u> This veritable fleet of Security Officers is distinguishable from the voluntary courtesy officer program in <u>Wright</u>, where the apartment complex contemplated in the creation of the program itself that there would be times when there was no courtesy officer on duty. <u>Wright</u>, 775 S.E.2d at 405.

Defendant HHPPOA asserts that the Rules and Regulations state only that it "reserves the right to deny admission" to the Plantation, which is a passive statement that does not show that HHPPOA had an affirmative duty to prevent access to certain individuals. HHPPOA Def.'s Resp. 7. However, a closer reading of the HHPPOA Rules and Regulations reveals that they state "[n]o guests/visitors will be admitted without prior approval of the Resident" and that "[e]very reasonable effort will be made by Security to notify Residents of visitors at the gate." Pl.'s Mot., Ex. B HHPPOA's Rules and Regulations. The phrasing of the HHPPOA Rules and Regulations that "every reasonable effort will be made" goes beyond the admittedly passive phrasing that HHPPOA "reserves the right to deny admission" to the Plantation that HHPPOA cites in its response.

Under the particular facts of this case, the court finds that the legal duty of the HHPPOA is distinguishable from that of a landlord of an apartment complex. While there may be differences between courts on the issue of under what circumstances a homeowner's association owes a duty of care to protect its residents from criminal activity, under Hartley all legal uncertainties "are to be resolved in the plaintiff's favor in determining whether fraudulent joinder exists" and "a novel issue cannot be the basis for finding fraudulent joinder." Hartley, 187 F.3d at 425. This jurisdictional inquiry is "not the appropriate stage of litigation to resolve" any uncertain questions of law and fact. Id. The Zambitos' negligence claim against HHPPOA is not the kind of "unadorned, the-defendant-unlawfully-harmed-me accusation" that fails to state a claim for relief under even the more-stringent 12(b)(6) pleading standard. Ashcroft v. Iqbal, 556 U.S. 662, 678

7

(2009).  The court might have reached a different conclusion if the Zambitos' allegations, for example, failed to mention any of the elements required for a negligence claim, alleged no facts supporting the elements, or limited their allegations to a conclusory statement that they were "a victim of HHPPOA's negligence."  See, e.g., Tohotcheu v. Harris Teeter, Inc., 2011 WL 5873074, at *4 (E.D. Va. 2011) (dismissing an employment discrimination claim for those reasons).  But the Zambitos' allegations against HHPPOA here do no such thing.  The complaint alleges that the "HHPPOA had a duty to act with reasonable care in monitoring and identifying suspicious and/or potential criminal activity within the gated community," and that it breached that duty by failing to take reasonable steps to prevent the Ocwen Defendants and/or Altisource from gaining access to the Plantation without notifying the Zambitos, failing to prevent the theft of the Zambito's personal property and failing to identify and report the theft of that personal property.[1]  Compl. ¶¶ 78-82.  The Complaint then alleges that these negligent acts and omissions were the direct and proximate result of the Zambito's injury and that the Zambitos have suffered substantial damage to their personal property, as well as other losses.  Compl. ¶ 83.  Under Hartley, once a district court identifies a "glimmer of hope" that the plaintiff may have a right to relief in state court, the jurisdictional inquiry ends— the fraudulent joinder doctrine does not require a plaintiff's ultimate success in state

---

[1]    The Zambitos include a cursory additional argument as to why HHPPOA is negligent, claiming that plaintiff Salvatore A. Zambito, II was listed on the account as the property owner but denied access to Hilton Head Plantation by the HHPPOA even after he presented personal identification and a valid Power of Attorney for his father, Plaintiff Salvatore A. Zambito, I.  Pl.'s Mot. 9; Compl. ¶ 82.  Since this argument is not discussed further by either party in the briefing on this motion, and the court can remand the case based on HHPPOA's negligence for granting the right of entry to Defendant Altisource alone, the court does not analyze it in depth.

8

court.  See Hartley, 187 F.3d at 426.  The court finds that the Zambitos have fulfilled this standard here.

Therefore, the court finds that on the face of the complaint, the Zambitos have stated a claim for negligence against the HHPPOA sufficient to defeat the fraudulent joinder claim under the Hartley standard, and that the Ocwen defendants have not met their "heavy burden" of showing that there is no possibility that the Zambitos can establish a claim for negligence against the HHPPOA.  Since removal of this action was improper because the HHPPOA is a "properly joined and served" defendant and is a citizen of South Carolina, the court grants plaintiffs' motion to remand.[2]

### IV.   CONCLUSION

For the aforementioned reasons, the court grants the Zambitos' motion to remand.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**December 15, 2016**
**Charleston, South Carolina**

---

[2]    In the notice of removal, the Ocwen defendants assert that it is also an improper defendant and have been fraudulently joined.  However, the court need not reach this issue.  Since the court finds that HHPPOA has been properly joined and served in this action, and HHPPOA is a citizen of the forum state, remand is proper on this ground alone.  It becomes irrelevant whether the Ocwen defendants have also been fraudulently joined.